UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID HUGHES, *individually and on behalf of all others similarly situated*,<br>  Plaintiff,<br><br>vs.<br><br>KORE OF INDIANA ENTERPRISE, INC., *et al.*,<br>  Defendants. | )<br>)<br>)<br>) 1:11-cv-1329-JMS-MJD<br>)<br>)<br>)<br>) |

## ORDER DECERTIFYING CLASS

On June 10, 2013, the Court issued an Order directing Plaintiff David Hughes to submit a report either detailing a plan for providing individual notice to class members or citing relevant legal authority demonstrating that such notice should not be required. [Dkt. 118 at 2.] On June 26, 2013, the Court received Mr. Hughes' response (the "Report"), wherein he takes the position that individual notice to the class members is neither required nor feasible. [Dkt. 119 at 1-2.] After considering Mr. Hughes' Report, and for the reasons explained below, the Court finds that it would be improper to maintain certification of this class and thereby vacates its previous Order certifying the class. [Dkt. 65.]

### I.
### BRIEF BACKGROUND

Mr. Hughes brought this class action under 15 U.S.C. § 1693, commonly known as the Electronic Fund Transfer Act (the "EFTA"), against Defendants Kore of Indiana Enterprise, Inc., Kore Enterprises, Inc., and On Kore, LLC (collectively, "Kore"), alleging violations of the EFTA's notice requirements for Automated Teller Machines ("ATM"). On August 17, 2012, the Court granted Mr. Hughes' unopposed Motion for Class Certification and certified the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. [Dkt. 65 at 1.] The Court's decision to grant certification was based in part on Mr. Hughes' representations contained in the

1

Memorandum in Support of Motion for Class Certification ("Certification Memorandum"). [Dkt. 61.]

A few weeks before trial, the Court recognized *sua sponte* that Mr. Hughes never provided notice to the members of the class. [Dkts. 113 at 1; 114.] That revelation required the Court to continue the scheduled trial so that Mr. Hughes could propose what he believed to be appropriate notice. [Dkt. 114.] Mr. Hughes proposes that notice be provided in three ways: 1) notice posted on the ATM at issue; 2) notice published in the *Indianapolis Star* newspaper; and 3) notice on a website. [Dkt. 117 at 1.] In response to his proposal, the Court cited its role as the "fiduciary of the class" and expressed concern that Mr. Hughes' proposed methods of notice did not conform with due process standards set forth by the United States Supreme Court. [Dkt. 118 at 1-2 (citing authority).] Mr. Hughes' response, [dkt. 119], causes the Court to question whether class certification is still appropriate.

## II.
### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 23(c)(1)(C), this Court retains the power to modify or vacate a class certification at any time prior to judgment. Indeed, the Seventh Circuit Court of Appeals has held that "a favorable class determination by the court is not cast in stone. If the certification of the class is later deemed to be improvident, the court may decertify." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981); *see Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (acknowledging that "a district court has broad discretion to determine whether certification of a class is appropriate"); *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003) ("Because the court must decide whether to certify a class early in the proceedings, it remains under a continuing obligation to review whether proceeding as a class action is

appropriate…. Thus, the court's initial certification of a class is inherently tentative.") (quotation omitted).

To certify a class under Rule 23(b)(3), a court must find that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." In adjudicating alleged ATM notice violations under the EFTA, many of the courts that deny certification or subsequently vacate it do so because a class action is not a superior method of litigating those claims. *See Mowry v. JP Morgan Chase Bank, N.A.*, 2007 WL 1772142 at \*6 (N.D. Ill. 2007) (explaining that in considering certification of a class brought under the EFTA, "the court should also weigh the logistical concerns" and also agreeing that the case was "unmanageable as a class action due to the difficulty of identifying and notifying the possible twenty million class members"); *see also Ballard v. Branch Banking & Trust Co.*, 284 F.R.D. 9, 16 (D.D.C. 2012) (denying class certification based on "plaintiff's concession that notice by publication is the only practical means for finding class members and…the potential class recovery will be *de minimis*").

As a "fiduciary of the class," a district court has a non-delegable duty "to order notice unless the risk of prejudice to absent class members is nil and to review for adequacy the form of notice proposed by class counsel." *Culver v. City of Milwaukee,* 277 F.3d 908, 915 (7th Cir. 2002). In the seminal case of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974), the United States Supreme Court directed notice to be sent by first-class mail to each member of an approximately 2,250,000 member class, holding that:

> [I]ndividual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23. As the Advisory Committee's Note explained, the Rule was intended to ensure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit. Accordingly, each class member who can be identified through reasonable effort must be notified

3

> that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action. There is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs.

*Id.*; *see In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977) (holding that "because constructive notice has long been recognized as a poor substitute for actual notice…it is to be used only when circumstances make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency").

The Seventh Circuit Court of Appeals has recognized that "[t]he class action is a valuable economizing device, especially when there is a multiplicity of small claims, but it is also pregnant with well-documented possibilities for abuse." *Greisz v. Household Bank*, 176 F.3d 1012, 1013 (7th Cir. 1999). Indeed, the Seventh Circuit cautioned that

> [t]he smaller the individual claim, the less incentive the claimant has to police the class lawyer's conduct, and the greater the danger, therefore, that the lawyer will pursue the suit for his own benefit rather than for the benefit of the class. The lawyer for a plaintiff class has not only an impaired incentive to be the faithful agent of his (nominal) principal, but also the potential to do great harm both to the defendant because of the cost of defending against a class action and to the members of the class because of the preclusive effect of a judgment for the defendant on the rights of those class members who have not opted out of the class action.

*Id.* With this possibility for abuse in mind, the Court turns to its analysis regarding the continued propriety of maintaining this litigation as a class action.

### III.
#### DISCUSSION

**A. Manageability of Class Action**

In his Report, Mr. Hughes contends that individual notice to the class members is not necessary in this case and that notice by "publication, internet and posted notice on the ATM" would be adequate. [Dkt. 119 at 1-2.] In support of this position, Mr. Hughes argues that

"individual notice is impracticable and could be prohibited by federal privacy laws." [*Id.*] In his recent Report, Mr. Hughes explains that a third-party, ATM Management, acted as the "transaction processor/servicer" for the two relevant ATMs and reveals for the first time that:

> ATM Management has provided third party discovery that provides a *truncated* account number which discloses *only the last four digits*. This is called the personal account number ("PAN") of the credit card or debit card account. The first six digits of a credit or debit card is the bank identification number ("BIN"). It is unknown whether ATM Management has the full account number or whether it can obtain the full account number because of privacy laws such as the G[ramm]-Leach Bliley Act.

[*Id.* at 2-3 (emphasis added).]

The Court notes that in Mr. Hughes' Certification Memorandum, however, he declared that the class could be identified by objective criteria: BINs and PANs, which he claimed were stored in the ATMs' computer data. [Dkt. 61 at 14.] Indeed, Mr. Hughes represented that

> each transaction will have a unique identifying number for the claimant['s] ATM card that will enable verification of class membership…. The verification of the claimant's bank card numbers does not create an individual inquiry. Further, no individual decision making has to be made. Rather, such a matching procedure to the data maintained by Defendant is a ministerial task that does not impair class treatment.

[*Id.* at 15.] While Mr. Hughes did suggest that "it is likely that the names and addresses of the individual class members will be difficult and costly to ascertain for purposes of direct notice," [*id.*], that statement contemplated potential hurdles associated with utilizing the BINs and PANs to acquire identifying information from third-party financial institutions, not an overarching uncertainty as to whether or not the BINs and PANs themselves were obtainable or whether a particular transaction qualified under the EFTA. Indeed, at no point in his Certification Memorandum did Mr. Hughes indicate that there would be any impediment to obtaining the class members' BINs or PANs. [*Id.*]

The Court is further troubled by Mr. Hughes' new contention that "[e]ven if the full account numbers could be obtained…there could be hundreds of banks to contact," given that the over 2,800 stipulated transactions took place in the "Broad Ripple area." [Dkt. 119 at 3.] Mr. Hughes argues that the location of the ATMs in Broad Ripple creates complications because

> [a]s most residents of Indianapolis know, the Broad Ripple area where Defendants['] ATMs are located is popular with college students. Indianapolis is home to Butler University, Indiana University-Purdue University ("IUPUI") and several other universities with students from across the country. The banks that would need to be contacted would be from coast to coast.

[*Id.*] But this argument cuts both ways. If the class members are located throughout the United States, as Mr. Hughes now contends, it seems unlikely that his primary methods of proposed notice—placing notice on the physical ATMs in Indianapolis and publishing it in an Indianapolis newspaper—would be reasonably calculated to provide sufficient notice to the class members.

For these reasons, in accordance with the Supreme Court's decision in *Eisen* and its progeny, the Court is not convinced that the requirement to provide individual notice to identifiable class members may be abandoned simply because doing so would require considerable financial resources and effort. 417 U.S. at 176. Additionally, Federal Rule of Civil Procedure 23(b)(3)(D) provides that in determining whether a class action is superior to other available methods of fairly and efficiently adjudicating the matter, the Court should consider, among other things, "the likely difficulties in managing a class action." Given Mr. Hughes' new representations regarding the feasibility of identifying, locating, and notifying the class members, the Court determines that this action has become unmanageable as a class action, which weighs in favor of decertification.

### B.  Superiority of Class Action

Federal Rule of Civil Procedure 23(b)(3) provides that the Court must conclude that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The Supreme Court has held that this requirement was added

> to cover cases in which a class action would achieve economies of time, effort, and expense, and promote...uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results..., [which] invites a close look at the case before it is accepted as a class action.

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted).  The Seventh Circuit Court of Appeals has not opined on the superiority of class actions alleging ATM notice violations under the EFTA.  Because of the dearth of relevant binding precedent, the Court turns to the opinions of sister district courts for guidance.

### 1) Analogous District Court Cases

In *Nadeau v. Wells Fargo*, 2011 WL 1633131 (D. Minn. 2011), the district court strongly criticized the purported superiority of class actions in dealing with ATM notice violations under the EFTA.  "The fact that common issues predominate, however, does not mean that a class action is the superior method of adjudicating the controversy.  This case is simply not appropriate for class treatment, even though the technical prerequisites would seem to indicate that it is."  *Id.* at *4.  In expressing disagreement with the proposition that "only a class action can vindicate consumer's rights," the district court in *Nadeau* opined:

> Nadeau notes that no other putative Plaintiff has come forward to file an individual lawsuit, even though this ATM displayed no fee notice for approximately one year.  Instead of leaping to the conclusion that consumers are unable to protect their own rights because of the small amounts of money at issue, perhaps a better explanation is that no consumer other than Nadeau considers themselves injured in any way….  The availability of statutory damages and attorney's fees and costs should alleviate some of Nadeau's concern about her fellow consumers.  People who are aggrieved by Wells Fargo's failure to have the

7

> required notice on this ATM have the same incentive to bring a lawsuit as Nadeau herself. Moreover, statutory damages in individually brought actions may be higher than anything available in a class action. Although the statute provides for a "ceiling" of $500,000 in class action statutory damages, there is no minimum recovery as provided in individual actions. A court may determine that statutory damages, in the face of the evidence of on-screen agreement to the fee and the extremely small amount of any actual damages, are *de minimis*. A *de minimis* recovery is not possible in an individual action, in which the consumer is guaranteed at least $100, and up to $1,000.

*Id.* at *4-5 (citation omitted).

Similarly, in *Ballard v. Branch Banking and Trust Co.*, 284 F.R.D. 9, 10 (D.D.C. 2012), the plaintiff brought a class action against the operator of an ATM located in Washington, D.C., alleging that the ATM operator had violated the EFTA by failing to provide a fee notice on the outside of one of its ATM. One of the arguments the ATM operator raised in opposition to class certification was that the class definition was overinclusive and, thus, failed to satisfy the Rule 23 requirements of commonality, typicality, and predominance. *Id.* at *12. This argument was based on the narrow application of the EFTA to "consumer accounts," which are defined as "demand deposit, savings deposit, or other asset account[s]…established primarily for personal, family, or household purposes…." *Id.*; 15 U.S.C. § 1693a. Although the plaintiff subsequently agreed to revise the class definition in accordance with the statute, the district court found the need to properly screen each purported class member problematic to class certification. *Ballard,* 284 F.R.D. at *12.

The district court in *Ballard* also observed that the ATM operator's challenge to class certification was more properly framed as a "challenge to the superiority of a class action as a vehicle for litigation." *Id.* at *13. The district court cited Rule 23(b)(3)(D), which requires a district court to consider the "likely difficulties in managing a class action" when assessing whether class certification is appropriate. *Id. Ballard* concluded that

> [t]o adjudicate this case, it is absolutely essential to communicate with the individuals who used the ATM.  In order to determine if an ATM-user is a "consumer" and therefore within the putative class, the Court must make certain limited individualized inquiries of each class member.  If this cannot be done, the Court will not know if the ATM-user was a "consumer" and therefore cannot ascertain the size of the class.  In addition, without this information, it cannot determine statutory damages.

284 F.R.D. at *13-14.  Because the ATM in question was located "in the middle of downtown Washington, D.C.," the district court recognized that the users presumably consisted of "tourists and visitors from all over the world." *Id.* at *14.  *Ballard* pointed out that the operator "would have to contact each bank—of which there may be hundreds if not thousands—and each bank would [then] have to search their own records to identify the particular ATM-user." *Id.* *Ballard* concluded that "[e]ven if this could be acceptable, each ATM-user would then have to be contacted and questioned to determine whether the account was a 'consumer' account used for personal purposes," as opposed to business accounts or personal accounts used for business purposes. *Id.*

Ultimately, *Ballard* found an even greater practical impediment to the certification of the proposed class:

> [T]hese notices provide a mechanism for class members to opt out, but do not require class members to actually participate in the suit.  Even if the Court were to use an "opt-in" notice[1], there is no reason to believe that anyone would come forward, particularly as the payout to each class member is likely to be so miniscule.  If ATM-users do not come forward to identify themselves as "consumer" account-holders, the suit cannot proceed because the Court will have no way of knowing which of the 2,000 transactions per month are attributable to "consumers."

---

[1] The Seventh Circuit does not recognize an alternative to the "opt-out" requirement for this type of class action.  *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("[T]he requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B) that 'the notice shall advise each member that…the judgment, whether favorable or not, will include all members who do not request exclusion.'").

*Id.* at *14-15 (endnote omitted). Considering all of the surrounding circumstances, the district court in *Ballard* ultimately denied certification of the proposed class. *Id*. at *16.

### 2) Mr. Hughes' Action

In his Certification Memorandum, Mr. Hughes argued that a class action was the superior method for adjudicating the controversy because "[g]iven that each potential plaintiff's damages will range from a hundred dollars or so to a few thousand dollars, it is fairly certain that individual plaintiffs would lack the resources to pursue their claims." [Dkt. 61 at 22.] Mr. Hughes implies that individual plaintiffs would not otherwise bring lawsuits because doing so would require an expenditure of attorney's fees greater than what the plaintiff could potentially recover in an individual suit under 15 U.S.C. § 1693m. [*Id.*] Mr. Hughes maintains these positions in his Report, arguing that this "limited recovery is not a strong incentive to opt-out, retain private counsel, and then file an individual EFTA lawsuit." [Dkt. 119 at 4.]

The EFTA's provisions regarding statutory damages are contained in 15 U.S.C. § 1693m(a) and provide, in relevant part:

> (a) *Individual* or *class action* for damages; amount of award:
>
> Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—
>
> (1) any actual damage sustained by such consumer as a result of such failure;
>
> (2)(A) in the case of an *individual action*, an amount not less than $100 nor greater than $1,000; or
>
> (B) in the case of a *class action*, such amount as the court may allow, except that:

>    (i) as to each member of the class *no minimum recovery* shall be applicable, and
>
>    (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

*Id.* (emphases added).

As an initial matter, Mr. Hughes' argument that a class action is superior because it allows the class members to spread the costs of litigation "across the larger pool," [dkt. 61 at 22], ignores that the EFTA contains a fee-shifting provision for successful litigants regardless of whether the matter is prosecuted individually or as a class action. 15 U.S.C. § 1693m(a)(3). In fact, in light of the fee-shifting provision and the available statutory awards, utilizing a class action to litigate the class members' claims may actually be more detrimental than if the class members were to bring individual lawsuits. Specifically, the statute provides that "as to each member of the class *no minimum recovery* shall be applicable, and (ii) the total recovery under this subparagraph in any class action…shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." 15 U.S.C. § 1693m(a)(2)(B) (emphasis added). Here, the parties have stipulated to $10,000.00 in recoverable statutory damages. [Dkt. 117-2.] That means that if each of the "over 2,800 transactions" results in 2,800 class members, the maximum amount each could recover would be approximately $3.57. [Dkt. 119 at 3.]

But as detailed above, in an individual action, a successful plaintiff is guaranteed an amount not less than $100. 15 U.S.C. § 1693m(a)(2). Under these circumstances, maintaining this matter as a class action could be detrimental to the class members' recovery. *See Matter of*

*Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995) ("In most class actions—and those the ones in which the rationale for the procedure is most compelling—individual suits are infeasible because the claim of each class member is tiny relative to the expense of litigation. That plainly is not the situation here.").

Additionally, as the district courts in *Nadeau* and *Ballard* recognized, allowing an EFTA claim to proceed as a class action presents numerous practical problems. For example, because the statute only applies to "consumer" transactions, the Court would need to screen each purported class member to confirm that he or she was a consumer as defined by the statute. Moreover, without identifying each individual class member and establishing the true composition of this "opt out" class, the Court has no way of determining how any awarded statutory damages would be apportioned.

Again, Rule 23(b)(3) provides that the Court must conclude that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The likelihood that the class members' recovery would be significantly less than if they pursued individual actions, in conjunction with the Court's previous analysis regarding the infeasibility of sufficient class notice, convinces the Court that maintaining this action as a class action is no longer the superior method for adjudicating the controversy.

### C. Decertification

In sum, Mr. Hughes' new position that he is not in possession of information that would lead to the identification of the individual class members with reasonable effort and that the class members are likely located throughout the United States leads the Court to conclude that this class has become unmanageable. Likewise, the practical problems presented by certification and the undeniable disparity between an individual plaintiff's potential recovery in these

circumstances and a class member's potential recovery if this remains a class action leads the Court to conclude that proceeding as a class action is no longer the superior method of adjudicating this controversy. Accordingly, the Court concludes that it is necessary to decertify the previously certified class and adjudicate Mr. Hughes' claims against Kore as an individual action.

## IV.
### CONCLUSION

For the reasons stated herein, the Court **VACATES** its previous Order granting Mr. Hughes' motion to certify this action as a class action, [dkt. 65], and herby **DECERTIFIES** this action as a class action. The Court will adjudicate Mr. Hughes' Complaint as an individual action and requests that the Magistrate Judge hold a conference with the parties to determine whether settlement is feasible and, if not, dates that the parties are available for trial.

07/10/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Eric G. Calhoun
TRAVIS, CALHOUN & CONLON PC
eric@travislaw.com

Ryan R. Frasher
RYAN FRASHER P.C.
rfrasher@frasherlaw.com

Kevin G. Kerr
HOEPPNER, WAGNER & EVANS LLP--Merrillville
kkerr@hwelaw.com

Thomas Edward Rosta

METZGER ROSTA LLP
Tom@metzgerrosta.com

Michael Eugene Tolbert
HOEPPNER, WAGNER & EVANS LLP--Merrillville
mtolbert@hwelaw.com